**In re Stephen and Roberta VELICHKO, Debtors.**

No. 11–38245.

United States Bankruptcy Court, S.D. New York.

June 12, 2012.

## MEMORANDUM DECISION HOLDING QUORUM FEDERAL CREDIT UNION IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY

CECELIA G. MORRIS, Chief Judge.

Debtors brings this motion seeking actual and punitive damages caused by Quorum Federal Credit Union's ("Quorum") refusal to return debtor's repossessed vehicle upon the filing of the bankruptcy petition. Quorum argues that Debtor's vehicle was not property of the estate and that it could legally maintain control of the vehicle despite the bankruptcy petition. For the reasons set forth in this Memorandum Decision, the Court finds that Quorum violated the automatic stay by failing to release the vehicle and the Debtors are entitled to costs and damages.

### Statement of Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate"); 157(b)(2)(E) ("orders to turn over property of the estate"); and 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship ...").

### Background

On November 21, 2011, Quorum repossessed the Debtors' 2003 Dodge Caravan. The Debtors filed chapter 7 on November 25, 2011. Quorum was listed as a secured creditor on the petition and was notified of the Debtors' intent to keep the vehicle and reaffirm the debt.

Quorum withheld the vehicle and stated that they were not required by law to return the vehicle. Debtors were told that

Francis J. O'Reilly, Esq., By: Louis McCarthy, Esq., Mahopac, NY, for the Debtors.

Cullen and Dykman, LLP, By: Elizabeth M. Aboulafia, Esq., Garden City, NY, for Quorum Federal Credit Union.

they had to pay arrearages of $817 and provide proof of insurance in order to regain possession of the vehicle. Forty-five days after the bankruptcy petition was filed and after various attempts to regain control of the vehicle, the Debtors paid $817, signed a reaffirmation agreement, and provided proof of insurance to Quorum and received possession of the vehicle.

Debtors now make this motion to hold Quorum in violation of the automatic stay. They seek actual damages in the amount of $303 for the cost of a rental vehicle to attend an out of state funeral; compensatory damages for out of pocket expenses, such as legal fees, and sanctions for punitive damages for the willful violation of the stay.

In its response to the motion, Quorum admits that it required $817 in arrears, proof of insurances and an executed reaffirmation agreement before it released the vehicle to the Debtors. The reaffirmation agreement was filed on February 7, 2012. Quorum argues that it did not violate the automatic stay because, pursuant to N.Y. UCC § 9–609(a), the Debtors no longer held a possessory interest in the vehicle. Instead, Quorum argues that the Debtors held a right to redeem and the vehicle was not property of the estate. They argue that any violation was not willful.

Quorum also argues that it had the right to impose conditions upon the release and reaffirmation of the vehicle. Moreover, Quorum argues that it would be inequitable to impose sanctions on it for conduct that occurred prior to the entry of the reaffirmation agreement. It argues that the reaffirmation agreement, as a "meeting of the minds," "resolved" any outstanding issues between the parties.

### Summary of the Law

### Whether Quorum was Required to Return a Repossessed Vehicle upon Filing

Section 542(a) states that

an entity, other than a custodian, in possession, custody, control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

In *United States v. Whiting Pools,* 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court determined that "property of the estate" includes property in which a creditor has a secured interest, and extends to encompass such property even if the secured creditor has taken possession of its collateral prior to the bankruptcy filing. *See* Collier on Bankruptcy P 542.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing and interpreting *Whiting* ). The Court stated that "[i]n effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of the reorganization proceedings[.]" *Whiting,* 462 U.S. at 207, 103 S.Ct. 2309.

In *Weber v. SEFCU,* 2012 U.S. Dist. LEXIS 40004 (N.D.N.Y Mar. 23, 2012), the court held that "a creditor who takes lawful repossession of a debtor's property prior to the debtor filing a bankruptcy petition must return the property to the debtor's reorganization estate immediately upon learning of the bankruptcy proceedings, as long as the debtor (1) retains an interest in the property and (2) any provision of the Bankruptcy Code makes the property available to the reorganization estate." *See also Thompson v. Gen. Motors Acceptance Corp., LLC,* 566 F.3d 699, 703 (7th Cir.2009); *In re Yates,* 332 B.R. 1, 4–5 (10th Cir. BAP 2005); *In re Sharon,* 234 B.R. 676, 681 (6th Cir. BAP 1999); *In*

*re Knaus,* 889 F.2d 773, 775 (8th Cir.1989) ("We fail to see any distinction between a failure to return property taken before the stay and a failure to return property taken after the stay. In both cases the law clearly requires turnover.... [and t]he duty arises upon the filing of the bankruptcy petition.").

■ The *Weber* court came to this conclusion after a well-reasoned interpretation of the Supreme Court's decision in *United States v. Whiting Pools,* 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Thus, as the *Weber* court recognized, "as long as the debtor retains an interest in the repossessed property and the property is capable of being pulled into the estate by a provision under the Bankruptcy Code, that property is included in the reorganization estate at the commencement of bankruptcy proceedings." *Weber v. SEFCU,* 2012 U.S. Dist. LEXIS 40004, at *9 (N.D.N.Y. Mar. 12, 2012). Pursuant to New York's Uniform Commercial Code, a debtor has the right to redeem the repossessed property. *Id.* at *9–10 n.6, 11 n.7 (citing N.Y. U.C.C. § 9–623(a)).

In its opposition, Quorum states that "while courts in [the Second] Circuit have arrived at different outcomes when considering this issue ... Quorum believes that this Court should adopt the reasoning of the *Alberto* court to find that Quorum's conduct did not violate the automatic stay." In *Manufacturers & Traders Trust Co. v. Alberto (In re Alberto),* 271 B.R. 223, 228 (N.D.N.Y.2001), the district court reversed a bankruptcy court's finding of a willful violation of the stay where, like here, a secured creditor refused to return a vehicle to the debtor that was repossessed prior to filing. This decision is not binding on this Court and has been criticized by the court in *Weber,* the more recent Northern District of New York decision, which this Court finds more persuasive.

The Court notes that while the Supreme Court's decision in *Whiting Pools* did not directly address turnover by secured creditors in chapters other than chapter 11, "the reasoning of the opinion applies equally in any case in which turnover would assist in the debtor's rehabilitation or fresh start." Collier on Bankruptcy P 542.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing *Gouveia v. IRS (In re Quality Health Care),* 215 B.R. 543, 566 n. 11 (Bankr.N.D.Ind.1997) for the premise that *Whiting Pools* applies in chapter 7 cases). Sections 362, 541, and 542 apply with the same force in a chapter 7 case as they do in a chapter 13 or a chapter 11. Although the court in *Weber* qualifies the bankruptcy estate as a "reorganization" estate, section 541 of the Bankruptcy Code makes no such qualification. Instead section 541 states that the "*estate* is comprised of all the following property, wherever located and by whomever held" and includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added); *see also In re Gerwer,* 898 F.2d 730, 734 (9th Cir.1990) ("[W]e see no compelling reason to limit sections 363 and 542 to a case of reorganization. Section 541 comprehensively puts within the estate all the property of the debtor whether reduced to possession or not and whether the estate of the debtor is being reorganized or liquidated. Section 363 is tied to this definition of the estate. The Trustee's power under section 542 to obtain turnover does encroach upon the expectations of a lienholder. But if the statutory power was intended to be invoked only in a reorganization, words of limitation were essential. As written, the statute speaks to the power of a trustee whether the debtor's estate is in reorganization or liquidation.").

In this case, Quorum did have a duty to turn over the vehicle to the Debtors upon the filing of the filing of their bankruptcy petition and by not doing so, have violated the automatic stay. *Sensenich v. Ledyard Nat'l Bank (In re Campbell)*, 398 B.R. 799, 811 (Bankr.D.Vt.2008) (stating that creditors have "an affirmative duty to take steps to deliver the debtor's personal property to the Trustee").

### Violation of the Automatic Stay

Bankruptcy Code Section 362(k) states in relevant part: "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k); *see also Weber*, 2012 U.S. Dist. LEXIS 40004, at *12 (finding that the creditor "was required to return the [vehicle] to [Debtor] upon learning that [Debtor] filed a bankruptcy petition and failure to do so violated the automatic stay").

■ Section 362(k) mandates an award of actual damages to an individual where the violation is willful, and the Court has discretion to assess punitive damages. Damages for willful violation of the automatic stay will lie if "a person takes a deliberate act ... in violation of a stay, which the violator knows to be in existence ... [s]uch an act need not be performed with specific intent to violate the stay. Rather, so long as the violator possessed general intent in taking actions which have the effect of violating the automatic stay the intent required ... is satisfied." *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 349 (Bankr.S.D.N.Y. 1998) (Gonzalez, J.).

■ The Second Circuit has stated that: any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h). *This standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations.*

*In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, *1105 (2d Cir.1990) (emphasis added). Even where a stay violation is not willful, the action taken in violation of the stay is void *ab initio*. *See In re Patti*, 2001 WL 1188218 at *7 (Bankr.E.D.Pa. 2001).

■ Here, Quorum received notice of the bankruptcy filing and did not release the vehicle—nor did it come to this Court for an order seeking a determination on whether it could maintain possession. Instead, Quorum unilaterally determined that it was not in possession of property of the estate and conditioned the release of the vehicle upon the signing of a reaffirmation agreement, payment of arrears, and providing proof of insurance. Quorum now argues that it cannot be held liable for any violation of the automatic stay by virtue of the signing of the agreement. While it may be true that the Debtors should have alerted the Court to this stay violation as soon as possible, Quorum cannot ratify its willful violation of the stay by forcing a debtor to sign a reaffirmation agreement prior to doing what it was required to do under the law.

In support of its position that the Debtors impliedly consented to the stay violation by signing the reaffirmation agreement (though no order has been entered

approving the reaffirmation agreement between Quorum and the Debtors), Quorum cites *In re FYM Clinical Laboratory, Inc.*, 1993 WL 288541, 1993 Bankr.LEXIS 1034 (Bankr.S.D.N.Y. June 17, 1993). *FYM* is concerned with the interpretation of a settlement agreement resolving a disagreement between a debtor and creditor. In that case, the settlement at issue was so ordered by the court after it was placed on the record of a hearing—and clearly established that the creditor had "agreed to relinquish its recoupment rights in exchange for 'good faith' negotiations in three months, a § 364(c)(3) lien and certain 'carve-outs' for professionals." *Id.* at *5, 1993 Bankr. LEXIS 1034 at *12–*13. The court in *FYM* was not expounding on the law of reaffirmation agreements but rather was interpreting a settlement agreement having nothing to do the issue in this case.

Next Quorum argues that Debtors ratified any violations of the automatic stay by executing the reaffirmation agreement and cite *In re Scotto*, 2010 WL 1688743, 2010 Bankr.LEXIS 1370 (Bankr.E.D.N.Y. Apr. 26, 2010). This case is also distinguishable from the facts at hand. In *Scotto*, the debtor sought to dismiss a chapter 7 petition based upon the fact that he did not give the attorney permission to file on his behalf and the fact that someone in the attorney's office forged his signature on the petition. The court in *Scotto* found that the debtor had ratified the bankruptcy filing by failing to protest the filing sooner despite obtaining knowledge of the petition two days after it was filed. *Id.* at *12–15, 2010 Bankr.LEXIS 1370 at *36–*44.

In that case, the court refused to dismiss the chapter 7 until the debtor could prove to the satisfaction of the chapter 7 trustee and the court that such dismissal would not unduly prejudice creditors. *Id.* at *14–15, 2010 Bankr.LEXIS 1370 at *43–*44. The case does not touch upon whether a secured creditor may withhold property of the estate in violation of the stay and then shield itself from sanctions by conditioning its release upon the signing of a reaffirmation agreement.

Finally, Quorum cites *In re Boates*, 2005 Bankr.LEXIS 2821 (Bankr.E.D.Pa. July 6, 2005) for its argument that Debtors should be estopped from invoking a violation of the automatic stay. In *Boates*, the debtor had staved off a foreclosure in state court by agreeing to an extension of the 180–day bar to re-filing a bankruptcy petition. Then, when she re-filed in violation of the agreement, she argued that such an agreement was invalid. Because the court determined that the debtor had deceived the creditor and had filed her second petition in bad faith, it estopped her from receiving protection of the automatic stay. The court noted that such a remedy was "tailored to address the harm done to [the creditor] and the state court process by the debtor's inconsistent representations." *Id.* at *34.

Here it is the creditor, not the Debtors, who acted in bad faith by retaining property of the estate unlawfully and then conditioning its release upon the signing of a reaffirmation agreement and the collection of pre-petition arrears despite the imposition of the automatic stay. If Quorum believed that it was entitled to lawfully retain the vehicle it should have sought permission of this Court to do so. *See Sensenich v. Ledyard Nat'l Bank (In re Campbell)*, 398 B.R. 799, 811 (Bankr.D.Vt.2008) ("A willful violation of the stay does not require specific intent to violate the stay. A party can be subject to liability under 362(h) [now § 362(k)(1)] if it engages in conduct which violates the automatic stay, with knowledge that a bankruptcy petition has been filed. In determining whether a

stay violation was willful, it is irrelevant whether the party believed in good faith that it had a right to the property at issue. Not even a good faith mistake of law or a legitimate dispute as to legal rights relieve a willful violator of the consequences of his act.") (internal quotation omitted). Instead of coming to this Court for a ruling, Quorum withheld Mrs. Velichko's only means of transportation—causing her to incur more debt by forcing her to rent a car and making it virtually impossible for her to receive the fresh start to which she is entitled under the Bankruptcy Code. Then as a condition for her to receive possession of the car, which she was legally entitled to receive upon the filing of the petition, Quorum extracted from her over $800 in arrears and a reaffirmation agreement.

### Conclusion

Because Quorum violated the automatic stay by retaining the vehicle after the bankruptcy filing, the Debtors are entitled to actual damages—their cost for the rental car, attorney's fees, and re-payment of arrears required by Quorum in order to release the vehicle. In addition, the Debtors are entitled to punitive damages. Quorum shall pay the amount of actual damages a second time to the Debtors as punitive damages and shall consider them current on the vehicle payments despite having to return over $800 of pre-petition arrears.

Debtors shall submit an order consistent with this decision. The order shall include a breakdown of the costs and fees incurred by the Debtors as a result of this stay violation and shall be settled on seven (7) days notice so that Quorum may have notice of and an opportunity to object to the amount of fees awarded.